UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL DELOGE,

    Plaintiff,                                  Civil Action No. 11-13961

v.                                            HON. ROBERT H. CLELAND
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Paul W. Deloge brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

## PROCEDURAL HISTORY

On April 30, 2002, Plaintiff filed an application for DIB, alleging disability as of January 30, 1995 (Tr. 77-78). After the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 24, 2004 before Administrative Law Judge ("ALJ") Neil White (Tr. 55). Plaintiff, then represented by Joseph Houle, testified (Tr. 55). On October 18, 2004, ALJ White found that Plaintiff could perform a full range of sedentary work (Tr. 55-61). On January 21, 2005, the Appeals Council remanded the case for further

development, directing the ALJ to (1) address his reasons for declining to adopt a physical assessment concluding that Plaintiff was capable of exertionally light work (2) articulate his reasons for discrediting Plaintiff's claims, using the factors set forth in SSR 96-7p and, (3) if necessary, obtain vocational expert ("VE") testimony regarding limitations on the available jobs base (Tr. 68-69).

ALJ White held a second hearing on April 20, 2005 (Tr. 554). Plaintiff, again represented by Joseph Houle, testified (Tr. 556-570), as did VE Timothy Shaner (Tr. 571-572). On August 11, 2005, ALJ White again found Plaintiff not disabled (Tr. 26). On July 13, 2011, the Appeals Council denied review (Tr. 7-9). Plaintiff filed suit in this Court on September 9, 2011.

## BACKGROUND FACTS

Plaintiff, born March 5, 1966, was 39 when the ALJ issued his decision (Tr. 26, 76). He attended four years of college and worked previously as an information clerk, automotive and airplane technician, driver, cashier, and prep cook (Tr. 84, 89). He alleges disability as a result of chronic back pain (Tr. 83).

### A.     Plaintiff's Testimony[1]

Plaintiff testified that since being discharged from military service in 1993, he completed a degree in music and last worked in 2000 as a customer service representative (Tr. 556-557). He reported that his work as a technician required him to fix cables and "set up equipment for test vehicles" (Tr. 557). He indicated that between 1988 and 1993, he was an in-flight technician in the military (Tr. 557).

---

[1] April 20, 2005 hearing.

Plaintiff reported that his physical problems were attributable to a 1992 back injury (Tr. 558). He alleged difficulty sitting or standing for extended periods due to lumbar spine pain, adding that he also experienced migrating foot pain and shoulder stiffness (Tr. 559-560). He reported that he obtained some relief from back pain with ice, heat, rest, and medication (Tr. 560). He reported that pain medication improved but did not completely relieve his condition (Tr. 561).

Plaintiff stated that he had been diagnosed with fibromyalgia in the year before the hearing, noting that the condition caused migraine headaches and additional foot, shoulder, and neck problems (Tr. 563). He estimated that he could sit or stand up to 15 minutes without a position change but was unable to lift even 10 pounds (Tr. 564-565). He opined that his condition had worsened in the past few years, noting that he was now unable to perform household chores (Tr. 565). He stated that on a typical day, he would alternate between sitting, standing, and reclining (Tr. 567). He alleged the medication side effects of concentrational problems and drowsiness (Tr. 568).

In response to questioning by his attorney, Plaintiff reiterated that after being discharged from the military in 1993, his work as an auto technician and as a customer service representative was curtailed by back problems (Tr. 569-570).

    B.    **Medical Evidence**

### 1.  Treating Sources[2]

May, 1992 treating records show that Plaintiff, performing active military duty, injured his back after attempting to lift 100 pounds (Tr. 173). In November, 1992, he was referred for physical therapy (Tr. 175). The following month, Jill M. LaRouchelle, P.T.

---

[2]Treating records predating Plaintiff's alleged onset of disability date of January 30, 1995 are included for background purposes only.

-3-

advised Plaintiff to continue with at least two weeks of physical therapy (Tr. 179). In August, 2000 Richard Rosenberg, M.D., performed a consultive examination of Plaintiff, concluding that back problems led to a 15 percent reduction in functionality (Tr. 315). Imaging studies of the lumbar spine were deemed unremarkable (Tr. 317). In March, 2001, Plaintiff was notified that he had been deemed 20 percent disabled by the Veterans' Administration ("VA") as of July 5, 2000 (Tr. 236, 319). In August, 2001, Plaintiff reported "mild" depression because his girlfriend was out of the country, but felt that he was coping well and did not require mental health services (Tr. 207-209). The same month, imaging studies of the lumbar spine were unremarkable (Tr. 219). November, 2001 treating notes state that a recent CT of the lumbar spine was unremarkable (Tr. 201, 216, 248). In February, 2002 a treating source found "no clear evidence of any acute neurogenic process, noting a recent negative EMG study (Tr. 192). A physical examination was unremarkable (Tr. 302). Plaintiff's "volitional effort" was deemed "questionable" (Tr. 196). In April, 2002, Plaintiff reported that Vicodin did not improve his back pain (Tr. 190). He was prescribed extra strength Vicodin (Tr. 190, 294). Treating notes from the following month show that Plaintiff was currently taking methadone (Tr. 224). Physical therapy notes show "minimal" progress (Tr. 234). The same month, a treating physician completed a form stating Plaintiff was disabled for an "unknown" duration (Tr. 325).

In June, 2002, Plaintiff reported level "seven" back pain on a scale of one to ten (Tr. 181, 283). Physical therapy records remarked that recent imaging studies showed only minimal degenerative changes of the lumbar spine (Tr. 181). Plaintiff's motivation was deemed questionable (Tr. 182). In February, 2003, Plaintiff reported "intermittent frustration with pain syndrome" (Tr. 274). March, 2003 treating notes state a history of "chronic back discomfort, dyslipidemia, and depression" (Tr. 271). Plaintiff was noted to have been

discharged from a pain clinic for non-compliance with controlled substance use (Tr. 271). September, 2003 imaging studies of the lumbar spine were unremarkable (Tr. 247, 266). "Obvious" muscle atrophy of the left quadriceps muscle and calf was noted (Tr. 267, 355). Plaintiff reported that he required the use of a cane "all of the time" (Tr. 262). Neurologist Dr. Suresh, M.D., observing that "strength is probably normal," but that Plaintiff did not "make a maximal effort," found that Plaintiff "does not need any operations" (Tr. 346). In October, 2003, Plaintiff's disability percentage was increased to 40 percent (Tr. 326). In February and March, 2004, Plaintiff reported cluster headaches (Tr. 253-254, 337-338). An April, 2004 CT scan of the head was normal (Tr. 246).

In May, 2004, Plaintiff reported continued back pain but denied a history of depression (Tr. 331). Tests were ordered for fibromyalgia (Tr. 332). Neurodiagnostic studies showed results "not inconsistent with . . . fibromyalgia" (Tr. 333, 356). In August, 2004, a treating source increased Plaintiff's dose of topiramate, noting that "[i]f fibromyalgia is the case, I expect that migrating peripheral pain symtoms [would] also decrease in severity and frequency" (Tr. 359). December, 2004 psychological treating notes state that Plaintiff believed that the VA's offer to provide mental health counseling was designed to undermine his claims of back problems (Tr. 387). He was assigned a GAF of 40[3] (Tr. 389). In January, 2005 Plaintiff was assigned a GAF of 45 based on reports of depression, medical problems, and stress from physical pain[4] (Tr. 384). March, 2005 treating records show that Plaintiff

---

[3]A GAF score of 31–40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 ( *DSM–IV–TR* ) (4th ed.2000).

[4]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American

was currently taking a number of pain medications and Citalopram (Celexa) for depression and anxiety as well as topamax and muscle relaxants for fibromyalgia (Tr. 144, 369).

### 2. Consultive and Non-treating Sources

In July, 2002, B.D. Choi, M.D. performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 149-156). Citing treating and consultive examination records, Dr. Choi found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 150). Plaintiff was deemed capable of frequent balancing and occasional climbing, stooping, kneeling, crouching, and crawling (Tr. 151). Dr. Choi found the absence of manipulative, visual, communicative or environmental limitations (Tr. 152-153). He found Plaintiff's statements regarding functional limitations consistent with the June, 2002 consultive medical examination (Tr. 154). A September, 2002 Psychiatric Review Technique found the absence of a mental impairment (Tr. 157).

### 3. Material Submitted Subsequent to the August 11, 2005 Administrative Decision[5]

On March 31, 2008, the VA found that Plaintiff was 100 percent disabled based on limitations as a result of several conditions (Tr. 419-429). The decision found that Plaintiff was 50 percent disabled as a result of "major depression with erectile dysfunction" as of

---

Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

[5] The material submitted for Appeals Counsel review consists of a March 31, 2008 VA finding that Plaintiff was 100 percent disabled, medical evidence postdating the August 11, 2005 determination, and material predating the determination but duplicative of the material considered by ALJ White. Medical records pertaining to Plaintiff's condition subsequent to the ALJ White's decision are intrinsically irrelevant to the period under review. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988). While the newer records have been reviewed, the Court limits its discussion to the March, 2008 VA findings.

March 1, 2005; 40 percent disabled as a result of fibromyalgia as of July 29, 2004; 10 percent disabled (lowered from 40 percent) as a result of lumbar strain, effective July 19, 2006 (Tr. 419). The decision cited June, 2004 treating notes stating that objective studies were not inconsistent with a diagnosis of fibromyalgia and a confirmed diagnosis of the condition on November 30, 2004 (Tr. 425 *see* 333, 393).

### C. Vocational Expert Testimony

VE Timothy Shaner classified Plaintiff's former work as a customer service representative as semi-skilled at the sedentary exertional level; automotive test techncian, semi-skilled/light; and delivery driver, unskilled/heavy[6] (Tr. 571). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work background:

> Assume that he would need the option to sit or stand throughout a work day. Ten pound lifting limitation. With those limitations, could he return to past work? (Tr. 571).

The VE replied that given the above limitations, Plaintiff could return to his work as an automotive test technician (Tr. 571). The VE found that Plaintiff could also perform the sedentary, unskilled work of an inspector, (1,800 positions in the regional economy); assembler (13,000); and surveillance system monitor (1,600) (Tr. 572). The VE found that

---

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

if Plaintiff's allegations that he was unable to perform even simple tasks on a routine basis were fully credited, no jobs would be available (Tr. 572). She concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for her testimony regarding a sit/stand work option which was based on her own professional experience (Tr. 45).

### D. The ALJ's Decision

Citing the medical records, ALJ White determined that Plaintiff experienced the severe impairments of fibromyalgia, migraine headaches, degenerative disc disease of the lumbar spine, but that none of the conditions met or medically equaled one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 25).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform a full range of sedentary work (Tr. 25). Citing the VE's testimony, he determined that Plaintiff could perform his past relevant work as a customer service representative as well as a significant range of other sedentary work[7] (Tr. 24-25).

The ALJ discounted Plaintiff's allegations of limitation, noting that his claims of long-term back pain were not supported by objective studies (Tr. 23). He cited August and September, 2001 imaging studies showing the absence of a disc herniation or spinal stenosis and "only minimal facet joint disease" (Tr. 23). He noted that Plaintiff had been only recently diagnosed with fibromyalgia (Tr. 23).

---

[7] The ALJ erroneously stated that the VE found that Plaintiff could return to his work as a customer service representative, when in fact, the VE testified that Plaintiff could perform his former job as a automotive test technician (Tr. 24, 571). However, the discrepancy is not raised by Plaintiff. Further, the Court finds that the mis-statement is harmless error, considering that the ALJ also adopted the VE's finding that Plaintiff could perform a significant range of other work (Tr. 25).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Sentence Six Material

Plaintiff argues first that the evidence submitted for Appeals Council review subsequent to the ALJ's decision provides grounds for a remand for further fact-finding. *Plaintiff's Brief* at 11-12.   He concedes that the VA's March 31, 2008 "100 percent" disability determination is not binding on the Commissioner, but argues that the decision is material to ALJ White's August, 2005 non-disability finding and should thus be considered. *Id.*

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate

such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g). *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006).

In the present case, the material submitted for Appeals Council review can be divided into three categories consisting of (1) treating records predating the August 11, 2005 decision, (2) treating records postdating the decision and, (3) the March 31, 2008 VA determination that Plaintiff was "100 percent" disabled under VA criteria. As to the first category, the records submitted to the Appeals Council which predate the decision are almost completely duplicative of documents already reviewed by the ALJ are thus not "new." Second, because medical evidence created after the August 11, 2005 pertain exclusively to Plaintiff's post-decision condition, they are immaterial to the ALJ's findings. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). If Plaintiff believes that his condition has worsened since the August, 2005 decision, the proper remedy would be to initiate a new claim for benefits. *Id.*

Finally, the VA decision, created over two years and seven months after ALJ White issued his findings, does not provide grounds for remand. Even assuming that the VA's 100 percent disability finding predated ALJ White decision, he was not bound by the findings of another agency:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us. 20 C.F.R. § 404.1504

Sixth Circuit case law suggests that a 100 percent VA disability determination may be entitled to some consideration. *McCartey v. Massanari,* 298 F.3d 1072, 1075 (9th Cir.

-11-

2002)(*citing Stewart v. Heckler,* 730 F.2d 1065, 1068 (6th Cir.1984)).  However as of the date of the August, 2005 decision, Plaintiff had been deemed less than 100 percent disability under VA criteria (Tr. 22).   As such, the ALJ was not required to adopt or even consider the VA's determination. *See Green v. Commissioner of Social Sec*., 2008 WL 3978476, *4 (W.D.Mich.2008)(no case law "reversing an ALJ's decision for failing to give weight to a VA decision of anything less than total disability").

 Further, as noted by Defendant, the March, 2008 decision, while relying in part on medical evidence predating the ALJ's August, 2005 findings, does not constitute new medical evidence.  *Defendant's Brief* at 5, fn 1 (citing *Hall v. Barnhart,* 2006 WL 1134216 (W.D. Wis. 2006)).  In *Hall,* the court denied a motion for a Sentence Six remand made on the basis of a subsequent VA finding, noting the lack of new and material *medical* evidence. *Id.* at *5.  Applicably here, Plaintiff has provided no new medical evidence predating the August, 2005 finding that would change ALJ White's decision.  In addition, while the VA's March 31, 2008 decision cites some medical records created prior to August 11, 2005, it is largely based on material postdating the SSA findings.  Aside from the above factors, the arguable materiality of the March, 2008 decision is undermined by the fact that it was issued thirty-one months following ALJ White's findings.

### B.  Fibromyalgia and Depression

Plaintiff also contends that the ALJ erred by failing to perform a proper evaluation of his pain and limitations as a result of fibromyalgia and depression.  *Plaintiff's Brief* at 13.  Plaintiff asserts that his limitations as a result of these conditions were erroneously discounted on the basis that he "had only recently started treating for them." *Id.*

The ALJ's discussion of fibromyalgia and depression do not provide bases for remand. First, the ALJ permissibly noted that Plaintiff was not diagnosed with fibromyalgia

until November 30, 2004. As of August 11, 2005, the condition would not have met the 12-month durational requirement set forth in 42 U.S.C. § 423(d)(1)(A). Even assuming that the June, 2004 treating reference to suspected fibromyalgia met the durational limit, the ALJ noted that the diagnosis did not account for allegations of disability dating back to January, 1995. Plaintiff's medical records do not contain mention of fibromyalgia until June, 2004, at which time neurodiagnostic studies showed results "not inconsistent with . . . fibromyalgia (Tr. 333, 356). Plaintiff did not receive treatment for the suspected condition until August 30, 2004 (Tr. 359). The ALJ's finding that Plaintiff did not receive a diagnosis or begin treatment until the 2004 is an accurate summation of the record.

Plaintiff also cites cases holding that the treating physician's opinion is entitled to amplified weight in a fibromyalgia case. *Plaintiff's Brief* at 14 (citing *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 817-818 (6th Cir. 1988); *Runyon v. Apfel,* 100 F. Supp.2d 447 (E.D. Mich. 1999). However, as pointed out by Defendant, treating records predating the ALJ's decision do not contain an assessment of Plaintiff's functional limitations as a result of fibromyalgia or a statement that the condition is disabling. Further, to the extent that the treating records made reference to condition, the ALJ adopted the treating diagnosis and acknowledged limitations created by the condition by going beyond Dr. Choi's non-examining finding that Plaintiff could perform exertionally light work and instead limiting him to sedentary work (Tr. 24, 149-156). Plaintiff's accompanying argument that the ALJ erred by discussing limitations as a result of depression is defeated by the fact that the condition, as noted by the ALJ, did not meet the 12-month durational requirement set forth in 42 U.S.C. § 423(d)(1)(A)[8] (Tr. 23).

---

[8]While earlier treating notes make scattered references to depression (Tr. 207-209, 271) Plaintiff himself denied that he was depressed as of May, 2004 and did not receive psychological treatment until December, 2004 (Tr. 331).

Finally, in the same section, Plaintiff folds in a brief argument that the ALJ's credibility determination was not well explained. *Plaintiff's Brief* at 15. He asserts that "ALJ White makes no articulation of his findings in his decision [and] only recites the medical records." *Id.* (citing *Wines v. CSS,* 28 F. Supp. 2d 954 (N.D. Ohio 2003)).

In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3); 416.929(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Plaintiff appears to cite *Wines v. CSS,* 268 F. Supp. 2d 954 (N.D. Ohio 2003), for the proposition that the ALJ was required to articulate *all* of the factors listed in C.F.R. § 404.1529(c)(3). However, *Wines* does not state that all of the seven factors listed above must be discussed in the administrative opinion, *see Id.* at 960, and I am unaware of any case law stating that all seven factors must be discussed - even in a case in which subjective complaints of limitations as a result of fibromyalgia take on heightened significance. *See See Allen v. Astrue* 2012 WL 1142480, *9 (N.D.Ohio 2012)("ALJ need not analyze all seven factors, but should show that he considered the relevant evidence.")(citing *Cross v. CSS,* 373 F.Supp.2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart,* 406 F.Supp.2d 1038, 1046 (E.D.Wis.2005)).

Here, the ALJ's credibility determination adequately addressed Plaintiff's allegations of disability. The ALJ began his credibility analysis by noting that Plaintiff's ongoing complaints of lumbar spine pain were unsupported by objective findings. Although Plaintiff

-14-

alleged disability as of January 30, 1995, the ALJ noted that the diagnosis of fibromyalgia had been given only nine months prior to the August, 2005 decision (Tr. 23). He permissibly found that Plaintiff offered no substantiation for his claim that fibromyalgia prevented him from sitting more than five minutes at a time (Tr. 23). The ALJ's observation that Plaintiff's medication provided him with significant relief from his symptoms is supported by November, 2004 treating notes indicating that Plaintiff experienced at least temporary relief from prescribed medications (Tr. 24, 394). The ALJ also noted that Plaintiff did not experience disabling side effects as a result of his prescribed medication (Tr. 24). Again, the medical transcript does not contain an assessment of Plaintiff's functional limitations as a result of fibromyalgia, much less a treating opinion that the condition rendered him disabled. Given the relatively few treating records related to fibromyalgia and the absence of treating opinion regarding his level of functional limitations or that the condition was disabling, the ALJ's credibility determination adequately addressed Plaintiff's symptomology as a result of fibromyalgia.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's current physical and psychological limitations. Moreover, Plaintiff is not barred from reapplying for benefits for the period postdating ALJ White's decision.[9] As to the present case, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, and should not be disturbed by this Court *Mullen v. Bowen*, *supra*.

---

[9] Plaintiff apparently declined his former attorney's advice to file a new claim for disability after receiving the ALJ White's August, 2005 decision (Tr. 418).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Date: October 31, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on October 31, 2012.

                                                Johnetta M. Curry-Williams
                                                Case Manager